[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 491.]

THE STATE OF OHIO, APPELLANT, *v.* GERSIN, APPELLEE.

[Cite as *State v. Gersin*, 1996-Ohio-114.]

*Criminal law—Sexual abuse of a child—Evidence—Expert testimony—Defendant in child sexual abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse.*

A defendant in a child sexual abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse.

(No. 94-2739—Submitted January 24, 1996—Decided August 28, 1996.)

APPEAL from the Court of Appeals for Lake County, No. 93-L-025.

————————————

{¶ 1} Appellee, Gary Gersin Sr., was convicted of four counts of gross sexual imposition for acts allegedly perpetrated against his daughter, Theresa. Gersin's contact with Theresa came to light while Theresa was in the care of her half-brother, Gary Gersin, Jr., who had custody of Gersin's three youngest children. An incident occurred between Gersin and Theresa when Gersin went to Gary Jr.'s home to pick up Theresa for unsupervised visitation.

{¶ 2} Theresa told Gary, Jr. about the incident. Gary, Jr. and his wife, Michelle, told Gersin that he could not take Theresa that day, and contacted the Lake County Department of Human Services. A social worker and a police officer came to the house to talk to Theresa, and they suggested that visitation be terminated temporarily. Gary, Jr. and Michelle were instructed to go to the police station with Theresa to fill out a report.

{¶ 3} Gary, Jr. and Michelle took Theresa to the police station the next day, June 25, 1992. Theresa was introduced to the different officers and given a toy badge. Deputy Tim DiPadova eventually interviewed Theresa, but terminated that

interview when she began to get sick. A doctor diagnosed Theresa as suffering from an anxiety reaction.

{¶ 4} In August, after Gary, Jr. decided to go forward with a complaint against his father, Peggy Taylor, the Executive Director of the Lake County Sexual Assault Center, interviewed Theresa in two separate one-hour interviews.

{¶ 5} At trial, Theresa, Deputy DiPadova, and Taylor all testified for the prosecution. Gersin attempted to introduce testimony from Dr. Richard Klein. Gersin's counsel explained to the trial judge the purpose of Klein's testimony in a bench conference:

"I had asked him to come and testify as to the proper approach to use with children whenever you're interviewing them for sexual abuse purposes. Basically, laying out what the proper procedure is, that in a custody area one must be extra careful because of increase in the possibility of false accusations; that there was [sic] some things that were not done that should have been done in order to evaluate this situation under certain conditions.

"* * *

"* * * Let me just add for the record that among the other things that I had discussed from talking to, not only this psychologist but other psychologists in preparing for this case, that part of the problem with children in this age is that when the proper interview process is not followed, or the children are being influenced, or even if you want to use the word brainwashed, the problem is they reach the point where they actually believe something happened when it didn't, but that's because of their perception of it. That's the information the adults were giving them."

{¶ 6} The trial court did not allow Klein to testify, based on this court's decision in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, which held that an expert may not testify as to the veracity of a child witness. The court of appeals reversed that ruling, finding the proposed testimony distinguishable from

that sought to be introduced in *Boston*. The court of appeals found that the testimony concerned not Theresa's veracity, but rather the method and technique used by prosecution witnesses to elicit Theresa's story.

{¶ 7} The matter is now before this court upon the allowance of a discretionary appeal.

———————————

*Charles E. Coulson*, Lake County Prosecuting Attorney, *Ariana E. Tarighati, Michael D. Murray* and *Julie E. Mitrovich*, Assistant Prosecuting Attorneys, for appellant.

*Talikka, Ischie, Talikka & Wilson* and *Kristi S. Talikka*, for appellee.

*David H. Bodiker*, Ohio Public Defender, and *Barbara A. Farnbacher*, Assistant Public Defender, urging affirmance for *amicus curiae*, Ohio Public Defender Commission.

*E. Charles Bates*, urging affirmance for *amicus curiae*, Ohio Association of Criminal Defense Lawyers.

———————————

**PFEIFER, J.**

{¶ 8} It is tragic that child sexual abuse cases are so prevalent that a body of law has been created which addresses their unique issues. Today, we are faced with yet another such case, and hold that a defendant in a child sexual abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse. Rather than infringing upon the fact finder's role, such testimony assists the trier of fact, and therefore is consistent with this court's holding in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.

{¶ 9} In *Boston*, this court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus. To allow an expert to so testify, this court held, "'infringe[s] upon the role of the fact finder, who is charged with making determinations of veracity and

credibility.'" *Id*. at 128-129, 545 N.E.2d at 1240. This court emphasized that "'[i]n our system of justice, it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.'" *Id*. at 129, 545 N.E.2d at 1240. We do not retreat from those statements in this case.

{¶ 10} *Boston* also stands for the proposition that expert testimony can be helpful to a jury in a child sexual abuse case. In *Boston*, this court determined that expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is therefore admissible pursuant to Evid. R. 702 and 704. This court reasoned that "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse. Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused." *Boston* at 128, 545 N.E.2d at 1239.

{¶ 11} Gersin sought to introduce testimony from Dr. Klein regarding established protocols for interviewing children who are the alleged victims of sexual assault. We must consider whether such evidence is relevant, whether it is admissible as expert testimony, and whether *Boston* allows its admission.

{¶ 12} Relevant evidence is any evidence which has a tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without it. Evid.R. 401 and 402. Prosecution witnesses relied upon Theresa's interviews in their testimony. How that information was obtained and the accepted protocols on how to obtain such information certainly are relevant.

{¶ 13} Likewise, testimony on those protocols is admissible as expert testimony. As this court noted in *Boston*, an expert may testify on the ultimate question of whether sexual abuse has occurred in a given case because most people are unfamiliar with the nuances of a child sexual abuse case. Similarly, most jurors are unaware of how such child abuse experts arrive at their conclusions.

4

Necessarily, in child sexual abuse cases, experts must rely on the version of events given to them by small children. Special interviewing processes are necessary to get information from child victims, who are often immature, inarticulate, frightened, and confused about the abuse they have received. Most jurors lack the knowledge of accepted practices in interviewing child victims, and expert testimony on the issue is therefore admissible.

{¶ 14} Finally, this court's holding in *Boston* does not make Klein's proposed testimony inadmissible. An expert testifying as to interviewing protocols does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination. An expert like Klein would testify as to what interview techniques are endorsed by certain professional organizations. Child sexual abuse cases are a special lot. A major distinguishing aspect of a child sexual abuse case is how the victim came to relate the facts which led to the bringing of criminal charges. A defendant not only should be able to cross-examine prosecution witnesses regarding how they obtained their information, but also should have the chance to present expert testimony as to how such information is ideally obtained. Prosecutors are free to cross-examine, or to question the idea that there is only one blanket method of interviewing that should be applied to every child.

{¶ 15} Meanwhile, the ultimate issue of the particular child's veracity is left to the jury. It was not the intent of *Boston* to stack the deck against defendants in sexual abuse cases, or to hide information from jurors. Even those who prey on the defenseless are entitled to a fair defense. *Boston* was about protecting the role of the jury. Relevant, expert information can only help a jury do its job.

{¶ 16} We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*

MOYER, C.J., YOUNG, F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

WILLIAM W. YOUNG, J., of the Twelfth Appellate District, sitting for WRIGHT, J.

State v. Gersin

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 17} The last thing we need in a criminal trial of this type is yet another expert opinion. What the defense attempted to show via expert testimony can just as easily be accomplished by effective cross-examination. Having two experts or more testify to the proper protocol regarding the method used to evaluate child victims of sexual abuse will only add to the confusion.

{¶ 18} Appellee proffered Dr. Klein's testimony in order to show that "when the proper interview process is not followed, * * * [the children may] reach the point where they actually believe something happened when it didn't * * *." As appellee's attorney stated, "that's because of [the children's] perception of it. That's the information the adults were giving them." In other words, Dr. Klein would have testified as to the "proper," nonsuggestive method that should be used when interviewing child victims of sexual abuse.

{¶ 19} It does not take a specialized knowledge or expertise to identify when an interview might have been overly suggestive. Protocols detailing the proper forensic examination of the sexually abused child are readily available to medical and legal personnel. See, *e.g.*, Guidry, Childhood Sexual Abuse: Role of the Family Physician (Feb. 1, 1995), 51 American Family Physician, No. 2, 407. A jury, with the help of an effective cross examination, is well equipped to evaluate whether the method of interviewing was proper or not. Thus, expert testimony on the proper methods that should be used, or on whether this particular interviewer used such proper methods, is not admissible under Evid.R. 702. For the foregoing reasons, I therefore dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

January Term, 1996

---