JOURNAL ENTRY AND OPINION
Defendant-appellant Wesley Rooney appeals from the decision of the Cuyahoga Court of Common Pleas, Juvenile Court Division, finding him to be delinquent based upon two counts of rape. The appellant was remanded to the custody of the Ohio Department of Youth Services for one year on each count of rape, to be served consecutively.
At the adjudicatory hearing, the trial court first heard the testimony of Ms. Heather Marshall, the mother of the victim and the sister of the appellant. The victim is her oldest daughter who was age seven at the time of the hearing. Ms. Marshall testified that the appellant lives with their grandmother and grandfather, who are approximately 79 years old and 67 years old, respectively. The victim would on occasion visit her great-grandparents and the appellant. Ms. Marshall testified that she was close to her brother and that there were no problems between her daughter (the victim) and the appellant. Ms. Marshall recalled one occasion, at some point between April 1, 1997 and June 30, 1997, just after she had moved into her present home, that the appellant took the victim to a park at the end of the street. The victim was not hesitant to go with her uncle.
On February 24, 1999, Ms. Marshall and the victim were at her grandparents' home for the appellant's sixteenth birthday. The victim just stood in the living room, watching, and then walked out of the house into the backyard. Ms. Marshall testified that this was unusual behavior as the victim never just walked-off without advising her mother of her destination. Ms. Marshall stated that the victim's overall behavior was not different on that day, but that over the next couple of days, the victim was acting differently.
A few days later, on March 2, 1999, while driving the victim to school, the victim revealed to her mother that when she was five the appellant had asked her to suck on his privates. This had occurred while the appellant accompanied the victim to the park. Ms. Marshall discussed the seriousness of this accusation with the victim, but the victim insisted that it was the appellant. The victim also revealed that this had occurred on one other occasion at the grandmother's home. Ms. Marshall left the victim at school and drove to her grandmother's house. She subsequently telephoned the pediatrician. The pediatrician referred her to a psychologist, Dr. Carol Litt.
After Dr. Litt spoke with the victim, Dr. Litt informed Ms. Marshall that there was no reason to believe that the victim was lying. (Tr. 11.) Ms. Marshall had a further discussion with the victim who revealed more details regarding the incident in the park. The victim informed her that she and the appellant were on the slide, which is located in a semi-enclosed area, when the appellant said not yet because there was someone nearby. The victim told her mother that she said no the first time the appellant asked her, but that he kept asking and she agreed because the appellant was mad. The victim was afraid to tell her mother because Ms. Marshall had always told her that should this type of event occur, the victim was not to comply and was to tell her mother. Ms. Marshall testified that she had no reason not to believe the victim. (Tr. 12.)
The State called the victim to testify. The court swore in the witness and then permitted the parties to question her in order to determine her competency. The State inquired as to her age, school, teacher, and grades. The next questions concerned her ability to tell the truth. The victim testified that you get into trouble when you tell lies. After further inquires by the appellant's counsel regarding her understanding of telling the truth, the court stated, Okay. I think we can go forward. (Tr. 22.) Neither party objected.
The victim testified that she likes the appellant and that they used to play with toys and games. She recalled going to the park with the appellant. She explained that the slide has a wall on the sides and that it is attached to the jungle gym. At the top of the slide the appellant made her suck his privates and told her not to tell anyone. She did not want to and she did not do as he asked at first. She was too scared to tell her mother. The next time this happened was at her great-grandparents' home in front of the television. The victim and the appellant were sitting in a chair together when he asked her to suck his privates. She did not want to, but she did. She did not tell her mother because she was scared. The victim recalled seeing the appellant at his birthday party and feeling scared. She told her mother a few days later on the way to school. Her mother was upset.
On cross-examination, the victim testified that these incidences occurred a year ago. When she saw the appellant at his birthday party, it was the first time she had seen him since this happened. She testified she did not tell her mother because she was scared that her mother would be mad at her because she did it. Counsel then further inquired into the victim's understanding of truthfulness. The victim testified that to make something up means telling stories that are not real. The victim would refuse to tell the story because it is not the truth.
Dr. Carol Litt testified she is a clinical psychologist who provides treatment and evaluation to children and adults with emotional concerns. She was the chief pediatric psychologist at Rainbow Babies and Children's Hospital for eighteen years prior to entering private practice for the last twelve years. She has evaluated children of every age.
Dr. Litt met with the victim on March 8, 1999. The victim was in Dr. Litt's office as a result of a confidence to her mother that there had been inappropriate sexual contact with her uncle. Ms. Marshall was very distressed and wanted some assistance in ascertaining whether or not this really was the case and, if so, how she could be of help to the victim. Dr. Litt testified that she interviewed the victim twice, but that she did not treat the victim. Rather, Dr. Litt performed an initial evaluation to determine whether or not it was likely that something had actually been experienced by the victim. Dr. Litt stated: My impression from the victim was that she had indeed been involved on two occasions that she reported with having been involved in some oral genital contact with this young man who was a member I believe is her mother's younger brother. (Tr. 36.) Dr. Litt repeated the victim's statement as to the location of the occurrences. Dr. Litt testified that the victim described the events in very general terms. She was rather anxious about it, but yet very straightforward and clear. (Tr. 37.) Dr. Litt further stated that it is not unusual for someone the victim's age to be anxious under the circumstances. Further:
 A. * * * But I found her use of her own language to be very convincing and appropriate, both her affect, the way in which she talked about this experience, and the fact that she used child-like language to describe it. She said that this boy had asked her had make (sic) her put her mouth on his privates and that was pretty much the extent to which she described what her experience was.
 Q. So through our experience, your thirty-two (32) years of experience, was it your feeling that she was telling the truth? A. I felt that this was a genuine report of an experience that she had indeed had, yes.
On cross-examination, Dr. Litt stated that the victim did not elaborate on what had happened and that when asked to do so the victim was clearly uncomfortable and looked away. In order to ascertain what had happened, Dr. Litt asked the victim to draw pictures of male and female bodies and to point to the area where the contact had occurred. On re-direct Dr. Litt did testify that the victim answered those questions by pointing to the crotch of the male figure.
Crystal Jeffery is a social worker who has been employed in the sex abuse intake department of the Cuyahoga Count Department of Children and Family Services for the past ten years. As a part of her work, she has dealt with children as young as two years old and she has probably spoken with over one thousand children during the course of her career.
Ms. Jeffery interviewed the victim on March 12, 1999. A call was received on the department hotline on March 9, 1999 and at that point she called to make the interview appointment. At this interview the victim revealed that her uncle, the appellant, had made her touch him in his private area. Twice he made her put her mouth on his private area. During the interview, the victim answered all questions, but was a little nervous.
The state inquired of Ms. Jeffery as follows:
 Q. During your profession, you have been there a long time, and you dealt with many children. What was your feeling toward the truthfulness of the statements that were made by [the victim]? A. I felt that she was telling the truth.
 Q. Why do you say that? A. Because she was very consistent in what she said.
That's basically what we go on, the consistency.
(Tr. 42-43.)
The victim informed her that one instance occurred at the park and the other was in her great-grandmother's home. Ms Jeffery stated that the victim knew her private parts. (Tr. 43.)
The appellant presented the testimony of his grandmother, Ms. Eunice Wyatt. Ms. Wyatt testified that the appellant has resided at her home for approximately three years and that she raised Ms. Marshall from the time Ms. Marshall was three years old. Although Ms. Wyatt frequently has visits from Ms. Marshall and her children, she has not done much babysitting because she has cancer. Ms. Wyatt testified that generally when the victim visited, the appellant was out with his friends. The victim never showed any fear of the appellant and in fact would ask when he was going to come home and play with her. Ms. Wyatt disbelieved the victim.
The appellant sets forth five assignments of error. This court will first consider the fourth assignment of error.
The fourth assignment of error:
 THE PREPARATION AND PERFORMANCE OF APPELLANT'S TRIAL COUNSEL WAS DEFICIENT AND PREJUDICED APPELLANT IN SUCH A WAY AS TO VIOLATE THE APPELLANT'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES.
The appellant asserts that he was denied effective assistance of counsel due to counsel's failure to: 1) require the State to disclose specific dates of the rapes pursuant to a bill of particulars; 2) make any meaningful, relevant objection to testimony given by expert witnesses Dr. Litt and Crystal Jeffery; 3) move for a separation of witnesses; 4) object to hearsay testimony; 5) conduct effective voir dire of the victim and the State's expert witnesses; and 6) call the appellant to testify on his own behalf.
Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. State v. Keenan (1998),81 Ohio St.3d 133, 152, citing to Strickland v. Washington (1984),466 U.S. 668, 688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine the confidence of the outcome. Strickland, supra. See, also, State v. Davie (1997),80 Ohio St.3d 311, 331 and State v. Reynolds (1997), 80 Ohio St.3d 670,674. There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. State v. Hamblin (1988), 37 Ohio St.3d 153 . Even debatable tactics do not constitute ineffective assistance of trial counsel, for it is obvious that nothing is seen more clearly than with hindsight. State v. Clayton (1980), 62 Ohio St.2d 45, 49. A reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Strickland, supra. Finally, once counsel's performance is found to be flawed, the central concern becomes the extent to which the flaws may have tainted the verdict. State v. Jones (1996),114 Ohio App.3d 306.
Turning first to the appellant's second issue, the appellant asserts that Dr. Litt and Ms. Jeffery were permitted, without objection, to testify as to the veracity of the victim. This court must examine the expert testimony of Dr. Litt and Ms. Jeffery in light of the Supreme Court rulings on the issue of expert testimony in child abuse cases. The Ohio Supreme Court, in State v. Stowers (1998), 81 Ohio St.3d 260, 262, reaffirmed its holding in the syllabus of State v. Boston (1989),46 Ohio St.3d 108, stating that Boston's syllabus excludes expert testimony offering an opinion as to the truth of the child's statements (e.g. the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person). The reasoning behind this decision is that to allow an expert to so testify infringes upon the role of the fact finder, who is charged with making determinations of veracity and credibility. State v. Gersin (1996), 76 Ohio St.3d 491, citing to Boston, supra. In examining the holding in Boston, this court notes that the Supreme Court found the admission of expert testimony which gives an opinion as to the truthfulness of a child is not only improper, it is egregious, prejudicial and constitutes reversible error. Id. at 128. The court held that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. The court found the error to be more than harmless. Boston at 129. This proposition was restated in the syllabus of State v. Moreland (1990), 50 Ohio St.3d 58, a capital case heard, without a jury, before a three-judge panel.
This court further notes that it is permissible for an expert to testify as to the proper protocol for examining a child victim of sexual abuse. Gersin, supra. Special interviewing processes are necessary to obtain information from young victims who are often immature, inarticulate, frightened, and confused. Gersin at 494. The Supreme Court has held that post-traumatic stress disorder in children is a proper subject for expert testimony. State v. Bidinost (1994), 71 Ohio St.3d 449. Additionally, the court has held that an expert witness' testimony that the behavior of an alleged child abuse victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence. Stowers, supra at 261.
In the case sub judice, Dr. Litt, when directly asked whether or not the victim was telling the truth, attempted to phrase the answer as admissible testimony by responding that the victim had given a genuine report of an experience she had. Despite the wording of Dr. Litt's response, the question was designed to, and did, elicit a response concerning the veracity of the victim. Turning to the testimony of Ms. Jeffery, she was also directly asked whether or not the victim's statements were truthful. Ms. Jeffery responded directly by stating that she felt that the victim was telling the truth.
Clearly, the appellant has established that he was deprived fair representation during the testimony of the State's expert witnesses by counsel's failure to object to testimony that the Supreme Court has found to not only be inadmissable, but egregious and harmful as well. The next question is whether or not such testimony was prejudicial.
In State v. Jones, supra, one court of appeals found under similar circumstances that the failure to object to expert testimony regarding the veracity of a child victim may be ineffective assistance of counsel. The court explained that while the admission of such testimony may not amount to plain error which requires a finding that the outcome clearly would have been different, it may amount to prejudicial ineffective assistance of counsel which requires only that there be a reasonable probability that the result would have been different. Id. at 319, 320.
In the case sub judice, the State argues that the appellant was not rendered ineffective assistance of counsel because the appellant was tried to the bench and because the victim testified. The Ohio Supreme Court had no hesitation in upholding the trial court's refusal to permit expert testimony as to the child victim's veracity when the case was heard before a three-judge panel. Moreland, supra. The court found it permissible to challenge the credibility of the child witness, but not through expert testimony. The Supreme Court went on to find that had the trial court permitted such testimony, under Boston, it would have been error. Here, as there, it was for the trial judge to assess the veracity of the victim, not for either Dr. Litt or Crystal Jeffery.
The appellant's fourth assignment of error is well-taken.
The balance of the appellant's assignments of error are moot pursuant to App.R. 12.
Case reversed and remanded for rehearing.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee his costs herein.
It is ordered that a special mandate be sent to the Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
LEO M. SPELLACY, J. and ANNE L. KILBANE, J., CONCUR.