This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant Joseph A. Wright ("hereinafter Wright") appeals a jury verdict finding him guilty on one count of corruption of a minor, two counts of gross sexual imposition, and three counts of rape, with one of the rape counts carrying a force specification. The issue before us is whether the trial court erred in denying Wright's motion for the expenditure of funds for expert assistance. For the following reasons, we affirm the trial court's decision.
This appeal stems from incidents that occurred between Wright, his two biological daughters, and their two stepsisters during the summer of 1995. On September 18, 1995, the Columbiana County Department of Children Services received a report indicating Wright had sexually abused four young girls in his home in Liverpool Township, Columbiana County, Ohio. This report is the product of the eldest of the stepsisters informing her mother of the abuse. At the time of the abuse, Wright's daughters were ten and eleven years of age and the two other victims were twelve and fourteen years of age. The oldest of the victims, not a biological daughter of Wright, reported that while at Wright's house in August of 1995, Wright fondled her breasts and vaginal area, and ultimately performed cunnilingus on her.
The youngest of the stepsisters indicated while visiting Wright's house in September of 1995, he fondled her breasts with both hands beneath her nightshirt while she was on the bed watching television. Further, on the same evening Wright touched her buttocks shortly after she had gotten out of the shower and was getting dressed.
The eldest of Wright's daughters stated that while riding with Wright on a trip to his residence during the summer of 1995, he indicated to her they needed to have a "special talk." When they arrived at the house, Wright ordered the girl into the bedroom. Once in the bedroom Wright ordered the victim to undress and to get to her knees. Wright then removed his jeans and underwear, she performed fellatio on Wright and he ejaculated into her mouth. She claimed this was not the first time this had occurred.
The youngest of Wright's daughters similarly disclosed that during the summer of 1995, Wright ordered her to perform fellatio on him while in his bedroom. When she refused, Wright became angry and struck her across the face in an attempt to compel her performance. The victim, after being struck, complied with Wright's orders. Wright fled the area at about the same time Children's Service's instituted the investigation. Both of Wright's daughters maintained he left them without any notice and failed to contact them at any time prior to his arrest.
On April 17, 1996, the grand jury for Columbiana County issued a secret indictment charging Wright with one count of corruption of a minor, two counts of gross sexual imposition, and three counts of rape. The trial court appointed counsel to represent Wright who subsequently entered a not guilty plea to all charges. On May 16, 1997, Wright filed a two-part motion for the production of statements for in camera inspection by the court and for authorization of funds for an expert witness. He likewise moved to have cassette tapes of interviews between the alleged victims and investigators released to the expert witness for evaluation. Wright's motion focused on the girls' repeated contacts with the investigators and prosecutor and their mother's employment as a social worker with the investigating agency. Wright expressed a need to examine and intelligently scrutinize the interview protocols employed by the state.
On June 12, 2000, the court denied Wright's motion. Four days later, trial commenced. During trial, Wright proffered evidence that he requested funds for expert assistance. If allowed to testify, the expert would explain the proper interview techniques to be used with alleged child sexual abuse victims. The trial judge reiterated his previous denial and on July 10, 1997, the jury returned guilty verdicts on all counts. That same day, Wright filed a timely notice of appeal. However, this court dismissed the appeal on May 5, 1998 for want of prosecution. Wright filed a pro se motion to re-open his appeal pursuant to App.R. 26(B) whereby this Court vacated the dismissal order and appointed the Ohio Public Defender to represent Wright on appeal.In his sole assignment of error, Wright contends:
 "Trial court erred in denying Mr. Wright's motion for funds to call an expert witness regarding the interview protocols used to develop the testimony of the complaining witnesses."
Wright claims the trial court violated his right to due process, as required by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, when it denied his motion for expert funds. Wright contends he showed both a reasonable probability the requested expert assistance would aid in his defense, and denial of the requested assistance would result in an unfair trial.
In support of his contention Wright points to the testimony given at trial. Wright maintains the testimony of the alleged victims returned again and again to the statement made by Wright to his daughter. Here, Wright questions the validity of the testimony due to the fact that each of the witnesses described the incident with the same detail. Wright indicates the similarity in recollection, among all three witnesses, suggests there may have been testimonial coaching on the part of the investigators and/or the prosecutor's office. Because he purportedly had no way to counter this testimony, Wright maintains he was prejudiced by the trial court's decision to deny funds for expert assistance.
In State v. Mason (1998), 82 Ohio St.3d 144, the Ohio Supreme Court detailed when a trial judge is required to provide an indigent defendant funds for expert assistance.
 "Due Process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." Id. at 150.
An indigent defendant who seeks state funded assistance bears the burden of establishing a reasonable necessity for such assistance. Statev. Gumm (1995), 73 Ohio St.3d 413, 427. At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. State v. Scott (1987), 41 Ohio App.3d 313,315. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. Id.
"Traditionally when dealing with criminal proceedings, there has been no authority for mandating the appointment of an expert witness for an indigent defendant in a non-capital case." State v. Blankenship (1995),102 Ohio St.3d 534, 551. Consequently, the standard to be applied is abuse of discretion. State v. Scott (1987), 41 Ohio App.3d 313, 314. "In determining whether a trial court abused its discretion an appellate court must determine whether the court considered (1) the value of the expert assistance to the defendant's proper representation * * *; and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought." State v. Jenkins (1984),15 Ohio St.3d 164, paragraph four of the syllabus.
In its judgment entry dated June 11, 1997, the trial court initially denied Wright's request for expert assistance stating it did not find "that there is a specific necessity of appointing an expert witness in this particular case." In its more detailed response, however, the trial court failed to address the factors enumerated in State v. Mason andState v. Jenkins, supra . . More notably, the trial court stated in response to Wright's proffer of evidence and reference to State v.Gersin (1996), 76 Ohio St.3d 491 :
 "As the Court has already ruled on that issue prior to the trial, and it was indicated on the record at that time that it issued it's ruling no matter what was agreed to by Counsel. With the Motion of proffer no one knows what the testimony would have revealed. It could have revealed that the interview techniques were totally proper or it may have criticized them I suppose. I read the Supreme Court decision I believe that the decision is more in line of cases that would indicate that the defendants are allowed to present defenses in a case that was one defense that they would be allowed to present. How anyone would know what the proper technique was I don't know under the Criminal Rules if it would be somehow be made available. But I don't know the background of that case any further."
It is evident the court was somewhat confused when deciding whether to grant Wright's motion for expert assistance. Therefore, we must first determine whether the proper standard of review is abuse of discretion or error of law. "The abuse of discretion standard should be used when the trial court makes discretionary decisions. * * * However, where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use the abuse of discretion standard." Castlebrook, Ltd. V. Dayton Properties Ltd.Partnership (1992), 78 Ohio App.3d 340 at 346. Such a decision will not be accorded the deference that is usually due the trial court, but instead will be reviewed de novo.
Id. Because the trial court misconstrued the standard to be applied in this case, we will proceed with a de novo review. We first acknowledge that Wright has placed a great deal of weight on the holding in State v.Gersin (1996), 76 Ohio St.3d 491 . In Gersin the Ohio Supreme Court held "a defendant in a child sexual abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse."Id. at 493. The Court further explained this testimony would not infringe upon the fact finder's role, rather such testimony assists the trier of fact in reaching its ultimate conclusion. Id. While Wright's understanding of Gersin is correct, it appears that
Wright's application to the case sub judice is faulty.
Gersin does not stand for he proposition that a trial court must honor every indigent defendant's request for expert assistance.
In a pre-trial motion dated May 16, 1997, Wright asserts, "The peril to the accused is even more great here, where the mother of the victims is an employee of the Columbiana County Department of Human Services, and close friend of the lead investigator of this case at DHS, Debbie Fisher." Clearly, Wright's argument centers around the factual situation in this case as opposed to a general need for this type of expert testimony. At first glance, it seems most unusual that the victims live with a social worker employed by the Columbiana County Department of Human Services (DHS). However, the victims' mother did not work directly in the department involved with the investigation. As to the allegation that the lead investigator from DHS was a friend of the ex-wife, this was denied by the investigator.
As mentioned above, we do not believe Gersin mandates the expenditure of funds in every case. We do, however, recognize that in some cases expert assistance is necessary. In Gersin, supra the Ohio Supreme Court opined "in child sexual abuse cases, experts must rely on the version of events given to them by small children. Special interviewing processes are necessary to get information from child victims, who are often immature, inarticulate, frightened, and confused." The court continued, "Child sexual abuse cases are a special lot. A major distinguishing aspect of a child sexual abuse case is how the victim came to relate the facts which led to the bringing of criminal charges." Id. at 494.
The most important factor in the case before us is that, while we must acknowledge the matter involves children as witnesses, the children here were between the ages of ten and fourteen when the offenses occurred. We are not dealing with inarticulate toddlers, rather, the witnesses were relatively articulate teens and preteens. Consequently, alternative mechanisms did exist through which trial counsel could have accomplished the same functions of the expert assistance — e.g. reviewing the witness interviews, using inconsistencies in prior statements as a form of impeachment, and proper cross-examination techniques.
Moreover, it appears that Wright is attempting, in his request for funds for an expert, to begin a fishing expedition in the hopes that the procedures employed in this case were wrong. Wright has made absolutely no showing that the actual procedures employed in this case were improper. In the matter before us, Wright argues that since the accusers were children and there was some connection by his ex-wife with the investigating body, he should be allowed to more fully delve into the procedures used in this investigation. While it appears from the record that such assistance would be the best possible, the record does not demonstrate why expert help in this area was reasonably necessary.
Consequently, we find Wright has not made a particularized showing of a reasonable probability the requested expert would aid in his defense and the denial of the requested assistance would result in an unfair trial. Although the trial court incorrectly based its decision on what appears to be evidentiary principles, we determine the trial court still came to the proper conclusion.
For the foregoing reasons, we find Wright's sole assignment of error to lack merit. Accordingly, the decision of the trial court is affirmed.
VUKOVICH, P.J. and WAITE, J. Concurs.