OPINION
{¶ 1} John M. Jenkins appeals pro se from a judgment of the Miami County Common Pleas Court denying his petition for post-conviction relief under R.C. § 2953.21.
 {¶ 2} Jenkins advances five assignments of error on appeal. First, he contends the trial court erred when it referred in its written decision to his failure to testify at trial or at the evidentiary hearing on his petition. Second, he argues that the trial court erred in finding no prejudice resulting from his trial counsel's failure to hire an expert to assist jurors in evaluating the credibility of sexual abuse allegations against him. Third, he asserts that the trial court erred in denying him an opportunity to establish a conflict of interest between himself and his post-conviction counsel. Fourth, he contends the trial court failed to issue adequate findings of fact and conclusions of law. Fifth, he argues that the trial court erred in finding his post-conviction claims barred by the doctrine of res judicata.
 {¶ 3} The record reflects that in 2000 Jenkins was charged with five counts of rape, two counts of sexual battery, and two counts of gross sexual imposition. The alleged offenses involved his stepdaughters. At trial, both girls were called to testify, but one of them could not complete her direct examination. As a result, the State dismissed all charges pertaining to her, and the trial court instructed the jury to disregard her testimony. With regard to the four remaining counts, the jury found Jenkins guilty of two counts of rape and one count of gross sexual imposition but acquitted him of one count of rape. We subsequently affirmed Jenkins' convictions on direct appeal in State v.Jenkins (July 27, 2001), Miami App. No. 2000-CA-59. Thereafter, we allowed Jenkins to re-open his appeal pursuant to App.R. 26(B), and inState v. Jenkins, Miami App. No. 2000-CA-59, 2002-Ohio-3651, we rejected two ineffective assistance of appellate counsel claims that he asserted. Jenkins subsequently filed a sixty-eight page, pro se petition for post-conviction relief on October 29, 2001, asserting five grounds for relief.[1] The trial court held an evidentiary hearing and on December 20, 2002, filed its decision and judgment entry rejecting all claims. Jenkins then filed a timely appeal to this court, advancing the five assignments of error set forth above.
 {¶ 4} In his first assignment of error, Jenkins contends the trial court erred in its written decision when it referred to his failure to testify at trial or at the evidentiary hearing on his petition. In support, Jenkins cites case law for the proposition that "[n]either a judge nor prosecutor may animadve[r]t upon the failure of a defendant to testify on his own behalf." (Appellant's brief at 7). Indeed, it is well settled that in a criminal trial a comment by the judge or prosecutor regarding a defendant's failure to testify violates the Fifth Amendment.Griffin v. California (1965), 380 U.S. 609.
 {¶ 5} In the present case, however, Jenkins does not argue that the judge or the prosecutor commented at trial on his failure to testify. Rather, Jenkins argues that in its opinion denying post-conviction relief, the trial court referred to his failure to testify at trial or at the evidentiary hearing on his petition. We note, however, that the second ground for relief in the petition was that defense counsel provided ineffective assistance by failing to call Jenkins to testify on his own behalf. In addressing this allegation, the trial court made the following finding: "No evidence was presented to establish that the Defendant's non-testimony at trial constituted ineffective assistance of counsel. In fact, the Defendant did not testify at his post-conviction hearing either." (Doc. #71 at 3). Because Jenkins' post-conviction argument involved his failure to testify at trial, it certainly was not error for the trial court to mention that fact. In addition, although Jenkins' failure to testify at the evidentiary hearing was immaterial to the issue raised in his second ground for relief, the trial court's reference to that fact does not constitute reversible error. Accordingly, we overrule Jenkins' first assignment of error.
 {¶ 6} In his second assignment of error, Jenkins argues that the trial court erred in finding no prejudice resulting from his trial counsel's failure to hire an expert to assist jurors in evaluating the credibility of the sexual abuse allegations against him. More specifically, he insists that defense counsel provided ineffective assistance by failing to investigate proper protocols for interviewing child sexual abuse victims and by failing to present expert testimony that police did not follow those protocols when interviewing the complaining witnesses in this case.
 {¶ 7} In order to prevail on his ineffective assistance of counsel claim, Jenkins must show that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice resulted from counsel's deficient performance. State v. Bradley
(1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus, followingStrickland v. Washington (1984), 466 U.S. 668. Furthermore, "[t]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, at paragraph three of the syllabus. "The failure to call an available witness whose testimony could acquit the defendant can constitute ineffective assistance of counsel. Nevertheless, there is a presumption that any challenged action on the part of defense counsel `might be considered sound trial strategy.' Decisions regarding the calling of witnesses will often fall within the range of acceptably sound trial strategy." State v. Johnson (Aug. 7, 1998), Montgomery App. No. 16803 (citations omitted).
 {¶ 8} In support of his argument, Jenkins notes that the prosecution's case rested solely on sexual abuse allegations made by his two stepdaughters. In light of this fact, he argues that a crucial part of his defense was undermining the credibility of those allegations. To that end, Jenkins insisted at the evidentiary hearing that competent counsel necessarily would have retained an expert to examine tapes of police interviews with his accusers and to testify at trial about improper and suggestive interview methods that were used to elicit incriminating statements from the children. Those methods were discussed at the evidentiary hearing by Jolie Brams, a clinical psychologist who testified on Jenkins' behalf. Based on her review of the tapes, Brams expressed her opinion that the police detective who conducted the interviews violated established protocols concerning how children should be interviewed. In particular, Brams explained that the detective failed to innoculate against false responses by testing the capacity for truth-telling before asking about sexual abuse allegations, asked leading questions, used peer pressure in the questioning by asking one child to confirm the other child's allegations, and conducted an interview that was too short to develop the necessary relationship or to comply with all protocols. (Hearing transcript at 47-60). Brams also explained that poor interview techniques may result in "solidification," a process that involves false information being elicited and then repeated frequently enough that the witness sincerely believes the false information is true. (Id. at 51-53, 62). This testimony was significant because the taped interviews were not played for the jury at trial. Despite this fact, Brams suggested that through solidification unreliable interviews with the complaining witnesses may have resulted in false sexual abuse allegations that, in turn, resulted in false trial testimony.
 {¶ 9} Having reviewed Brams' analysis of the interview tapes, we harbor little doubt that her testimony would have been admissible at trial to assist the jury in assessing the credibility of the complaining witnesses. Indeed, in State v. Gersin (1996), 76 Ohio St.3d 491, the Ohio Supreme Court held that "a defendant in a child sexual abuse case may
present testimony as to the proper protocol for interviewing child victims regarding their abuse." (emphasis added). It does not follow, however, that an attorney necessarily provides ineffective assistance if he fails to utilize such an expert. To the contrary, the Ohio Supreme Court has recognized that whether to call an expert is a matter of trial strategy, and "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." State v.Nicholas (1993), 66 Ohio St.3d 431, 436; see also State v. Thompson
(1987), 33 Ohio St.3d 1, 10-11.
 {¶ 10} In the present case, defense counsel, a public defender with fifteen years of experience, did precisely that-he relied on cross examination of the detective who interviewed the complaining witnesses rather than calling an expert witness to critique tapes of those interviews and to testify about defects in the interview process. In support of his decision, Jenkins' trial counsel explained that, with regard to expert witnesses, he was cognizant of "who's out there, what they can do, what the protocol is," and that he understood "the gist of making sure that children witnesses aren't led." (Hearing transcript at 37). Trial counsel added that after reviewing the interview tapes in question, he did not see anything "egregious," and he believed that he could address all issues through cross examination. (Id.). Counsel also implied that, as a matter of strategy, he did not desire to start a "contest" between competing experts, as he did not believe that a battle between opposing experts would be in his client's interest. (Id. at 37-38).
 {¶ 11} Having reviewed the record, we are unconvinced that defense counsel's performance fell below an objective standard of reasonableness when he failed to consult an expert and have the expert testify at trial concerning the taped interviews of the complaining witnesses. As noted above, defense counsel professed a general awareness of "who's out there" and "what they can do" with regard to expert testimony. Counsel also indicated that he understood "what the protocol is" and "the gist of making sure that children witnesses aren't led." In light of this testimony, the record persuades us that the decision not to consult an expert was an informed one. Furthermore, as noted above, the decision to rely on cross examination rather than to call an expert witness generally is a matter of trial strategy, and experienced defense counsel followed such a strategy in this case. We note too that the State did not introduce expert testimony to assist the jury in assessing the credibility of the complaining witnesses' allegations. If defense counsel had called such an expert, however, the State very well may have done likewise. If the jury ultimately found the State's expert to be more credible, then Jenkins' defense would have been harmed. In light of that danger, we cannot say defense counsel provided deficient representation by foregoing a potential battle of experts. We also note that if defense counsel had called an expert to testify about the taped interviews, the State very well may have sought to introduce the tapes into evidence. In its December 20, 2002, opinion, however, the trial court recognized that at least one of the videotapes was potentially damaging to the defense, insofar as the victim "volunteered a number of specifics about the crimes without prompting by the detective," "corrected the detective on several matters, very authoritatively," and "presented herself as an emotional, angry, and sympathetic figure." (Doc. #71 at 4 n. 2). In the trial court's opinion, "competent defense counsel would not want the jury to view the tape." (Id.). In order to minimize that danger, competent defense counsel might forego having an expert evaluate the tape and testify at trial. In short, we simply cannot say that defense counsel's reliance on cross examination rather than consulting and calling an expert witness was outside the range of acceptably sound trial strategy. Accordingly, we conclude that counsel's performance did not fall below an objective standard of reasonableness,[2] and we overrule Jenkins' second assignment of error.
 {¶ 12} In his third assignment of error, Jenkins asserts that the trial court erred in denying him an opportunity to establish a conflict of interest between himself and his post-conviction counsel. According to Jenkins, the conflict of interest involved post-conviction counsel's failure to raise certain issues at the evidentiary hearing and refusal to permit Jenkins to testify on his own behalf at that hearing. Most significantly, it appears that Jenkins wished to call his own physician, Dr. Rodney Stone, who allegedly would have testified that Jenkins suffered from erectile dysfunction. According to Jenkins, this fact was highly relevant because this medical condition made it physically impossible for him to have raped the complaining witnesses. Jenkins also contends that his proposed testimony at the evidentiary hearing would have included a denial of the allegations against him and an explanation of his medical condition.
 {¶ 13} On appeal, Jenkins contends that post-conviction counsel refused to follow his directions and failed to introduce the foregoing testimony. Attached as exhibits to Jenkins' pro se appellate brief are a copy of a motion and an affidavit attesting to the alleged conflict of interest. Jenkins contends that he prepared these materials prior to the evidentiary hearing in order to bring the issue to the trial court's attention. As the State notes, however, the record does not indicate that these materials ever were filed in the trial court or presented to the judge who presided over the evidentiary hearing.
 {¶ 14} The only record evidence Jenkins cites to suggest that he sought to bring a conflict of interest to the trial court's attention is a brief exchange during the evidentiary hearing. After post-conviction counsel rested, Jenkins, his attorney, and the trial court engaged in the following discussion:
 {¶ 15} "MISS CLARK: Your Honor, at this time we have, uh, no further witnesses.
 {¶ 16} "MR. JENKINS: Your Honor —
 {¶ 17} "THE COURT: Okay.
 {¶ 18} "MISS CLARK: And —
 {¶ 19} "MR. JENKINS: — at this time I would move to address the Court for the record?
 {¶ 20} "THE COURT: Well you better talk to your attorneys first —
 {¶ 21} "MISS CLARK: Yes.
 {¶ 22} "THE COURT: — because they're representing you. Defendants don't have the right to just speak to the Judge. We go through the attorneys because they're the professionals.
 {¶ 23} "MR. JENKINS: I would ask for leave to —
 {¶ 24} "MISS CLARK: May I have a quick moment to speak with him?
 {¶ 25} "THE COURT: Yes, you may.
 {¶ 26} "MISS CLARK: Thank you, Your Honor.
 {¶ 27} "MR. JENKINS: Thank you, sir.
 {¶ 28} "MISS CLARK: Your Honor, would it be all right if we used the jury room or, or another room so we can have some privacy and have a discussion?
 {¶ 29} "THE COURT: We'll take a ten minute recess if you like?
 {¶ 30} "MR. HANSON: Thank you.
 {¶ 31} "MISS CLARK: Thank you, Your Honor. (RECESS).
 {¶ 32} "THE COURT: We're back on the record in 00CR128. Miss Clark or Mr. Hanson, do you have anything else?
 {¶ 33} "MISS CLARK: No, Your Honor. We've completed our presentation." (Hearing transcript at 80-81).
 {¶ 34} In our view, the foregoing exchange does not support Jenkins' argument that the trial court deprived him of the opportunity to establish a conflict of interest. Although the trial court initially stopped Jenkins from speaking, it merely directed him to talk to his attorney first. After conferencing with Jenkins, post-conviction counsel returned and, without any apparent objection from Jenkins, informed the court that no additional evidence would be presented. At that point, the trial court had no reason to suspect the existence of a conflict of interest, and Jenkins neither said nor did anything to indicate otherwise. As a result, we cannot agree with Jenkins' assertion that the trial court deprived him of any rights during the post-conviction hearing.
 {¶ 35} Finally, we find no prejudice to Jenkins as a result of the alleged conflict at issue. Even if Dr. Stone and Jenkins had testified that he suffered from erectile dysfunction, we are unpersuaded that post-conviction relief would have been warranted. Jenkins sought to introduce this testimony to show that trial counsel was ineffective in failing to pursue an impotence defense to the two penile-vaginal rape charges against him. Prior to trial, the State filed a bill of particulars indicating that the first of these offenses occurred "on or about September, 1998 through June 26, 1999," and the second occurred "on or about June 26, 1999 through December, 1999." (Doc. #12 at 1).
 {¶ 36} The post-conviction record contains a note from Dr. Stone concerning his treatment of Jenkins for impotence. In relevant part, it states: "This gentleman has low testosterone. Without supplements he is tired, emotional, profoundly fatigued + has NO libido. Last testosterone injection was 8/10/99 + it lasts for 4-6 weeks. After it wears off he hasno desire for sex and is completely unable to achieve an erection." (Doc. #48 at Exh. C). This note appears to comprise the basis of Jenkins' impotence defense.
 {¶ 37} Upon review, however, we conclude that Dr. Stone's note does little to support Jenkins' defense. The note indicates that without testosterone injections, Jenkins has no desire for sex and cannot achieve an erection. It also indicates, however, that Jenkins had an injection on August 10, 1999, and that the effects of the injection could have lasted until near the end of September, 1999. The first vaginal rape allegedly occurred before September, 1999, and the second occurred "on or about June 26, 1999 through December, 1999." (Doc. #12 at 1). With regard to the first rape, Dr. Stone's note plainly would have done nothing to establish an impotence defense. With regard to the second rape, the note likewise would have done nothing to preclude the possibility that Jenkins committed the offense between late June and late September, 1999, a time frame that is consistent with the allegations in the bill of particulars. Finally, we observe that Dr. Stone's note concerning erectile dysfunction would have had no impact on the other sexual abuse charges against Jenkins, as they did not involve the use of his penis. In light of the foregoing facts, competent trial counsel reasonably may have elected not to call Dr. Stone as a witness and not to call Jenkins to testify about his erectile dysfunction. Therefore, even if post-conviction counsel refused to present such evidence, we find no prejudice to Jenkins and we overrule his third assignment of error.
 {¶ 38} In his fourth assignment of error, Jenkins contends the trial court failed to issue adequate findings of fact and conclusions of law. Upon review, we find this argument to be unpersuasive. The trial court's findings of fact and conclusions of law focused primarily on defense counsel's failure to present expert testimony that police improperly interviewed the complaining witnesses. The trial court presumably focused on this issue because it was the central issue addressed by Jenkins' counsel at the evidentiary hearing. We note, however, that the trial court's findings of fact and conclusions of law, although not lengthy, did touch upon each of his five grounds for relief. In our view, the trial court's findings of fact and conclusions of law were sufficient to convey to Jenkins the basis of its decision and to provide for meaningful appellate review. See State v. Calhoun,86 Ohio St.3d 279, 291-192, 1999-Ohio-102. Accordingly, we overrule Jenkins' fourth assignment of error.
 {¶ 39} In his fifth assignment of error, Jenkins argues that the trial court erred in finding his post-conviction claims barred by the doctrine of res judicata. It appears, however, that the trial court only applied res judicata to Jenkins' ineffective assistance of counsel claim based on defense counsel's failure to present expert testimony that police improperly interviewed the complaining witnesses. In its December 20, 2002, opinion, the trial court reasoned that this issue could have been raised on direct appeal or through delayed appeal. (Doc. #71 at 5).
 {¶ 40} We disagree. Jenkins' ineffective assistance of counsel claim based on his attorney's failure to have an expert witness critique police interviews with his accusers required the presentation of evidence outside the trial record. Although the trial record revealed that no such expert was called, the trial record did not reveal why defense counsel failed to call an expert or what testimony such an expert would have provided for the jury. Without record evidence explaining why defense counsel failed to call an expert, Jenkins could not demonstrate deficient performance. Without record evidence setting forth what such an expert would have told the jury, he could not demonstrate prejudice flowing from the absence of the testimony. As a result, it was necessary for Jenkins to present evidence de hors the record to establish his claim. At the evidentiary hearing on his post-conviction relief petition, Jenkins' trial counsel provided some of the necessary information, explaining why he did not call an expert witness to critique police interviews with the complaining witnesses. Expert witness Jolie Brams provided the rest of the necessary information, explaining her belief that the interview techniques used by police were unacceptable and may have elicited false sexual abuse allegations. Given that testimony from trial counsel and Brams was needed in order to resolve Jenkins' claim, he could not have raised it on direct appeal or in a delayed direct appeal, and it was not barred by res judicata.
 {¶ 41} In addition to relying on res judicata, however, the trial court also addressed the merits of the foregoing claim and found (1) that defense counsel did not provide deficient representation by failing to call an expert and (2) that the absence of Brams' testimony did not prejudice Jenkins. For the reasons set forth more fully above, we agree with the trial court's alternative finding that the failure to call an expert witness to critique and challenge police interviews with the complaining witnesses did not constitute deficient representation within the meaning of Strickland. Accordingly, we overrule Jenkins' fifth assignment of error and affirm the judgment of the Miami County Court of Common Pleas.
GRADY, J., and YOUNG, J., concur.
[1] As specific grounds for relief, Jenkins alleged ineffective assistance of counsel based on trial counsel's failure: (1) to investigate and develop an impotence defense; (2) to call Jenkins as a defense witness on his own behalf; (3) to call as a defense witness Dr. Rodney Stone, who allegedly would have supported the impotence defense; (4) to call as a defense witness Crisandra Howard, who allegedly would have provided a motive for false sexual abuse allegations; and (5) to investigate proper witness interviewing techniques and to present expert testimony demonstrating that police improperly questioned the alleged victims in this case.
[2] Absent constitutionally deficient representation by Jenkins' trial counsel with regard to the use of an expert witness, we have no occasion to consider the second part of the Strickland analysis, namely whether the lack of expert testimony resulted in prejudice.