OPINION
{¶ 1} Appellant, John Bright, brings this appeal from a judgment of the Trumbull County Juvenile Court finding him guilty, following a bench trial, of attempted gross sexual imposition.
 {¶ 2} The record discloses the following facts. At the time of the attempted gross sexual imposition, the victim ("Victim") was fourteen years old.[1] Victim is severely disabled as the result of brain damage sustained as an infant. His disabilities include poor motor coordination, reflective of cerebral palsey, and mental retardation. Due to his disabilities, Victim is very limited in his ability to verbally communicate and his mental capacity is that of a five-year-old.
 {¶ 3} Appellant, a resident of Trumbull County, was also fourteen years old at the time of the incident. Although not handicapped, appellant has previously displayed a pattern of behavioral problems.
 {¶ 4} On August 23, 2000, appellant was visiting his grandparents who resided across the street from Victim's house, on Rapids Road, Geauga County. That afternoon appellant went across the street to visit with Victim, as he had done on previous occasions. At this time, Victim and his father ("Victim's Father") were working together in their front yard building a shed for goats. Appellant offered to help Victim and Victim's Father with this project and began to assist them.
 {¶ 5} Later that afternoon, Victim's Father, still working on the shed, noticed that Victim and appellant were missing and began to search for the two boys. During the course of his search, Victim's Father noticed the boys' shoes near a large dirt pile located by his rear property line. Victim's Father testified at the adjudicatory hearing that as he approached the dirt pile he heard appellant state, "[Victim], squeeze your butt."
 {¶ 6} As he closed in on the area, Victim's Father observed his son under a pine tree, on his hands and knees, completely naked from the waist down, with his pants around his ankles. Victim's Father further testified that appellant was kneeling directly behind Victim's buttocks with his genitals exposed. While Victim's Father never saw appellant make physical contact with Victim, he did observe appellant withdrawing his exposed genitalia from the area of Victim's buttocks.
 {¶ 7} Victim's Father immediately put an end to this conduct and escorted appellant back to his grandmother's house. Victim's Father then contacted his wife ("Victim's Mother") and the Geauga County Sheriff's Office. Victim's Mother arrived home prior to the arrival of the police and attempted to question Victim about what had happened. At first Victim was too scared to answer any of her questions. However, after Victim's Mother consoled him for approximately fifteen minutes, Victim was able to answer some of her questions regarding what had happened.
 {¶ 8} Sergeant Uzurski ("Sgt. Uzurski"), from the Geauga County Sheriff's Department, arrived shortly thereafter and discussed with Victim's Father, while in Victim's presence, what Victim's Father had seen. Subsequently, Sgt. Uzurski attempted to interview Victim regarding what had occurred that afternoon. Because of Victim's disabilities, Sgt. Uzurski was unable to understand Victim's verbal or physical descriptions of what took place. As a result, Geauga County Job and Family Services ("GCJFS") was contacted and assistance was requested to help with interviewing Victim.
 {¶ 9} A short time later, Tricia Dunlap ("Ms. Dunlap"), an intake assessment social worker with GCJFS, arrived at the home. With the assistance of an anatomically correct figure, Ms. Dunlap proceeded to interview Victim. During this interview, Ms. Dunlap asked specific questions regarding what had happened between Victim and appellant. Victim answered Ms. Dunlap's questions by nodding or pointing to the anatomically correct figure.
 {¶ 10} Based upon these events, on January 30, 2001, the State of Ohio filed a complaint against appellant in the Geauga County Juvenile Court alleging that appellant had committed gross sexual imposition in violation of R.C. 2907.05(A)(5).
 {¶ 11} On March 30, 2001, appellant filed an ex-parte motion requesting that an expert witness be appointed at the state's expense. Without a ruling on the ex-parte motion this matter proceeded to adjudication on April 5, 2001.
 {¶ 12} Just prior to the adjudicatory hearing the trial court held a voire dire to determine whether Victim was competent to testify. Following a brief discussion with Victim, the trial court determined that he was not competent to testify. During the adjudicatory hearing, appellant renewed his motion for the admission of an expert witness at the state's expense and the trial court denied this request.
 {¶ 13} At the closing of the adjudicatory hearing, the trial court found appellant to be a delinquent child as defined by R.C. 2151.02 for having committed the offense of attempted gross sexual imposition in violation of R.C. 2907.05(A)(5). The matter was then transferred to the Trumbull County Juvenile Court for sentencing.
 {¶ 14} On April 9, 2001, the trial court released written findings of fact and conclusions of law. In this document, the trial court stated that it "did not find, beyond a reasonable doubt, that sexual contact had occurred between the two minor children as alleged in the complaint[,]" however, it "did find, beyond a reasonable doubt, that John Bright [appellant], a minor child did attempt to have sexual contact with [Victim] ***."
 {¶ 15} From this judgment appellant issued a timely notice of appeal, setting forth three assignments of error for our consideration:
 {¶ 16} "[1.] THE TRIAL COURT ERRED WHEN IT DENIED THE JUVENILE'S MOTION TO APPOINT AN EXPERT WITNESS TO ASSIST IN HIS DEFENSE.
 {¶ 17} "[2.] THE TRIAL COURT ERRED WHEN IT OVERRULED THE JUVENILE'S OBJECTION TO HEARSAY AND RULED THAT STATEMENTS MADE BY THE ALLEGED VICTIM WERE EXCITED UTTERANCES AND ADMISSIBLE.
 {¶ 18} "[3.] THE TRIAL COURT'S ADJUDICATION OF THE COMPLAINT AS TRUE, BEYOND A REASONABLE DOUBT, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 19} In his first assignment of error, appellant contends that the trial court erred in not granting him the authority to present an expert witness during the adjudicatory hearing. Appellant states the issue as "whether a juvenile accused of a sexual offense is entitled to have an expert witness to review the investigation and otherwise assist in his defense."
 {¶ 20} On March 30, 2001, appellant filed an ex-parte motion to appoint an expert at the state's expense. In his ex-parte motion, appellant explained that the anticipated testimony of the expert witness would address the following issues: (1) the suggestibility of children, (2) the development of children, (3) the memory and learning capacities of children, (4) the proper investigative procedures in interviewing children who are allegedly victims of sexual abuse, and (5) the proper interviewing techniques used by mental health professionals specifically concerning the complaining witness. The trial court did not rule on the ex-parte motion since it was filed less than a week before the adjudicatory hearing. Appellant then renewed his motion to appoint an expert witness at the close of appellee's evidence. The trial court denied such motion.
 {¶ 21} In his brief, appellant argues that he was prejudiced by the absence of an expert witness. Appellant states that "[d]ue to the alleged victim's handicap and the law enforcement officer's [Sgt. Uzurski] and social worker's [Ms. Dunlap] lack of training in child sexual assault cases, the juvenile [appellant] had a right to present evidence of the proper protocol for investigating these types of cases." Accordingly, appellant concludes that he was unable to confront Sgt. Uzurski and Ms. Dunlap as witnesses, and was denied his right to assist in his own defense in violation of the Sixth Amendment of the United States Constituion.
 {¶ 22} A ruling concerning the appointment of an expert is within the broad discretion of the trial court. State v. Deel (Sept. 30, 1986), 11th Dist. No. 11-062, 1986 Ohio App. LEXIS 8575, at 43. See, also, InRe: Creel (Sept. 20, 2000), 9th Dist. Nos. 20066 and 20074, 2000 Ohio App. LEXIS 4230, at 39. Therefore, when determining whether a trial court erred in denying a party's motion for appointment of an expert at the state's expense we must examine whether the trial court abused its discretion. State v. Gotham (Dec. 31, 1997), 11th Dist. No. 96-T-5485, 1997 Ohio App. LEXIS 6034, at 18. "An abuse of discretion is more than an error of judgment, but instead demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" In Re: Creel at 39, quoting Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 23} It is important to recognize that the Ohio Rules of Evidence establish adequate preconditions for admissibility of expert testimony, and courts should favor the admissibility of expert testimony whenever it is relevant to the proceedings. State v. Nemeth (1998),82 Ohio St.3d 202, 207.
 {¶ 24} In State v. Gersin (1996), 76 Ohio St.3d 491, the Supreme Court of Ohio held that "a defendant in a child sexual abuse case may present testimony as to the proper protocol for interviewing child victims regarding their abuse." Id. at 493. The Court, however, was still required to determine whether the evidence introduced by the expert would have been relevant to the proceedings. (Emphasis added.) Id. at 494.
 {¶ 25} At issue in this appeal is whether appellant's expert would have been capable of presenting relevant evidence. "Relevant evidence is any evidence which has a tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without it." Gersin at 494.
 {¶ 26} We were presented with a similar issue in State v. Gotham
(Dec. 31, 1997), 11th Dist. No. 96-T-5485, 1997 Ohio App. LEXIS 6034, at 18. In Gotham, we held that the trial court abused its discretion by denying a defendant's motion for appointment of an expert at the state's expense filed four days before trial. Id. at 22-23. We noted that the state had scheduled seven expert witnesses to present testimony at trial regarding the juvenile victim's testimony of alleged sexual abuse, and expert medical testimony indicating such abuse. Id. at 22. Accordingly, we reasoned that the defendant had provided "the court with reasonable notice that expert witness testimony would be reasonably necessary for proper representation of the defendant." (Emphasis added.) Id. at 23.
 {¶ 27} In the instant case, appellant asserts that Sgt. Uzurski's discussion of the alleged sexual abuse with Victim's Father and Victim's Mother prior to Victim's interviews and while in Victim's presence tainted his subsequent interviews. Accordingly, appellant concludes that expert witness testimony and assistance regarding improper interview techniques was necessary to rebut what Victim stated during his two separate interviews. We disagree.
 {¶ 28} As stated previously, to conclude that a trial court abused its discretion when denying admission of an expert witness it must be shown that such expert witness would have provided information that was relevant and reasonably necessary. Gersin and Gotham, supra. In the case at bar, at no time during direct examination did Sgt. Uzurski present testimony or evidence of what was said or displayed physically by Victim during his brief interview. The minimal amount of testimony given by Sgt. Uzurski which did relate to his interview with Victim, was made during appellant's cross-examination. This testimony, however, was very general in nature and did not include specific testimony of what Victim said verbally or non-verbally.
 {¶ 29} Furthermore, Ms. Dunlap was precluded from testifying as to what Victim stated verbally and physically during her interview because these statements were hearsay.
 {¶ 30} Since appellee presented no evidence as to what was said or displayed during Victim's interviews, it was not relevant or reasonably necessary that an expert witness be appointed. Therefore appellant's first assignment of error is without merit.
 {¶ 31} Appellant's second assignment of error contends that the trial court erred when it overruled appellant's hearsay objection to a portion of Victim's Mother's testimony. At the adjudicatory hearing, appellant objected to testimony offered by Victim's Mother that described non-verbal statements made by Victim in response to Victim's Mother's questions. Appellant's brief asserts that Victim's statements do not fall under the excited utterance exception because Victim's Mother had spent fifteen minutes calming Victim down, she was visibly hysterical, and she repeatedly asked him leading questions.
 {¶ 32} The trial court heard Victim's Mother's testimony regarding Victim's statements and reviewed the hearsay arguments presented by both parties. Following its review the trial court determined that the statements fell under the excited utterance exception to hearsay. The trial court stated that the excited utterance exception was available because "there was a startling occurrence that produced a nervous excitement, that he [Victim] was still under the influence of the event at the time that he made his statement, despite that there was some period of time for him to calm down." Furthermore, the trial court stated that while there were some leading questions, they were not leading to the extent that they made the testimony inadmissible.
 {¶ 33} A trial court has "broad discretion to determine whether a declaration should be admissible under the various hearsay exceptions."State v. Rohdes (1986), 23 Ohio St.3d 225, 229, Rev'd. on other grounds,State v. Kidder (1987) 32 Ohio St.3d 279. Consequently, a trial court's decision to admit a declaration under the excited utterance exception, Evid.R. 803(2), will not be reversed absent an abuse of discretion. Statev. Shelton (Sept. 27 2002), 11th Dist. No. 2001-P-0050, 2002-Ohio-5157, at ¶ 23. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 34} "Evid.R. 803(2), provides that:
 {¶ 35} "'[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition,' is an admissible exception to the hearsay rule. For a purported excited utterance to be admissible there must have been: (1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the event." Shelton at ¶ 24, citing State v. Taylor (1993),66 Ohio St.3d 295, 300-301.
 {¶ 36} "Additionally, when deciding whether a statement is an excited utterance, the court should consider: (a) the lapse of time between the event and the declaration; (b) the mental and physical condition of the declarant; (c) the nature of the statement; and (d) the influence of intervening circumstances." Shelton at ¶ 25.
 {¶ 37} "There is no per se amount of time after which a statement can no longer be considered an excited utterance." State v. Chappell
(1994), 97 Ohio App.3d 515, 522-523. While the passage of time is not dispositive of the question, it is a factor the court must consider when deciding whether the excited utterance exception is applicable. Id. at 523. "The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." State v. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, at 14.
 {¶ 38} Ohio courts have acknowledged that children are more likely to remain in a state of nervous excitement longer than adults would. Therefore, they are less capable of engaging in the reflective thought that the excited utterance exception attempts to avoid. Id. However, we have previously stated, "hearsay allegations of child molestation must be regarded very cautiously" because children are more susceptible to suggestion than adults. Id. at 15. In other words, children are more likely to say what they think they are expected to say to avoid punishment.
 {¶ 39} In the case at bar, the exact length of time between the attempted gross sexual imposition and the non-verbal statements made by Victim is unknown. However, the time differential seems to be less than an hour.[2] Victim's Mother testified that when Victim first saw her she was crying and this upset him. After she consoled him for about fifteen minutes, she proceeded to question him as to the day's events. Victim responded non-verbally to these questions by pointing or nodding his head yes or no.
 {¶ 40} Considering that Victim's mental capacity is that of a five-year old, it was reasonable to find that he was still in a state of spontaneous excitement less than an hour after the incident. See e.g., Chappell at 521-528 (holding that nine year old alleged rape victim's statement thirty-two hours after the rape was properly admitted as an excited utterance); Weigand at 2-3 (holding that six year old victim's statements made less than twenty-four and forty-eight hours after a sexual assault were properly admitted as an excited utterance).
 {¶ 41} Appellant also contends that because Victim's Mother was visibly upset prior to questioning Victim, his subsequent statements were not spontaneous in nature. Although Victim's Mother testified that she was crying when she first saw Victim, there was no evidence presented that he was subjected to any other outside influences. Victim's Mother's display of emotion in front of Victim prior to her questioning did not destroy the spontaneaouty of his statements.
 {¶ 42} Finally appellant argues that Victim's Mother's questions were leading in nature and, therefore, Victim's statements were negatively influenced. In Shelton, we recognized that "the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." Id. at ¶ 26.
 {¶ 43} In State v. Simko (1997), 71 Ohio St.3d 483, 490, the Supreme Court of Ohio carved out an exception with respect to whether leading questions destroyed the application of the excited utterance exception. In Simko, the Court stated "[g]iven that the victim was unable to speak because of the intubation in her throat, the questions posed to her by the detective could certainly be characterized as leading ***. However, the questioning by the detective does not appear to be coercive, and the victim could have readily shook her head `no' to any of the questions, since the detective described her as being `alert' and `aware of what was going on.'" Id. at 490. The Court found that although the questions were leading they were not coercive and the excited utterance exception was applicable. Id.
 {¶ 44} At trial and on appeal, appellant cites State v. Terra
(1991), 74 Ohio App.3d 189, as authority for his argument that Victim's Mother's questions were inadmissible hearsay because they were leading and coercive. Although factually similar to the instant case, Terra is an appellate case which pre-dates Simko. Consequently, Simko supplies us with the relevant and binding law and will be applied accordingly.
 {¶ 45} In the case sub judice, Victim, although alert and aware of what was going on, was unable to verbally communicate with his mother. Consequently, it was necessary to ask him leading questions to establish communication. As a result, the fact that leading questions were asked in this situation does not immediately preclude the excited utterance exception. Rather, the controlling factor is whether the questions were coercive.
 {¶ 46} The questions that Victim's Mother asked Victim were not coercive. There was no evidence produced that demonstrated that Victim was being coached, threatened or coerced into making his statements. To the contrary, Victim could have easily shook his head no to the questions asked. Because Victim's Mother's questions were not coercive the excited utterance exception is still applicable.
 {¶ 47} Accordingly, the trial court did not abuse its discretion in finding that the excited utterance exception was applicable, and appellant's second assignment of error is without merit.
 {¶ 48} Assuming arguendo that the excited utterance exception is not applicable, it is evident that the introduction of Victim's statements was harmless error. "The Supreme Court of Ohio has held that an error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction, and that in such cases there must be overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction." Weigand at 9-10.
 {¶ 49} In its written findings of fact and conclusions of law, the trial court explained that it did not need to find beyond a reasonable doubt that there had been sexual contact between Victim and appellant. The trial court based this conclusion on Victim's Father's eyewitness testimony and the absence of any evidence that contact had occurred. It is apparent that the trial court did not take into account Victim's statements when making its judgment. Therefore, any error on the trial court's part in admitting Victim's statements was harmless.
 {¶ 50} Appellant argues in his third assignment of error that the trial court's adjudication of appellant was against the manifest weight of the evidence. The foundation of appellant's argument is that the trial court's judgment was based upon Victim's Mother's inadmissible hearsay testimony and because Victim's Father's testimony at the adjudication hearing differed from his statement given to Sgt. Uzurski on the day these events occurred.
 {¶ 51} When reviewing a claim that a judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 52} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. An appellate court is to engage in a limited weighing of the evidence introduced at trial in order to resolve whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J. concurring). Accordingly, the reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of syllabus.
 {¶ 53} As an initial matter, we are inclined to note that appellant incorrectly frames his argument regarding Victim's Mother's hearsay statements as a manifest weight of the evidence argument. Appellant's argument should have been framed in regards to sufficiency of the evidence. "[T]he legal concepts of `sufficiency of the evidence' and `weight of the evidence' are quantitatively and qualitatively different."State v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, at ¶ 38.
 {¶ 54} The relevant inquiry when reviewing sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rationale trier of fact could have found all essential elements of the crime proven beyond a reasonable doubt. Statev. LaMar, 95 Ohio St.3d 181, 197, 2002 Ohio 2128. When conducting such a review we do not weigh the evidence; rather, our inquiry is limited to whether reasonable minds could reach the conclusion reached by the trier of fact. Id.
 {¶ 55} We previously found that Victim's statements made to Victim's Mother were properly admitted under the excited utterance exception to hearsay, or, in the alternative, the admission of these statements was harmless error. Upon review of the statements, it is evident that, when viewed in the light most favorable to the prosecution, reasonable minds could reach the conclusion that appellant was guilty of attempted gross sexual imposition. Thus, appellant's first argument that the trial court's judgment was based upon insufficient evidence is not well taken.
 {¶ 56} Appellant's second argument contends that the judgment was against the manifest weight of the evidence because Victim's Father's testimony differed from his statements given to Sgt. Uzurski. Specifically, appellant states that Victim's Father's memory became sharper at the adjudication hearing as to the events of the day the incident occurred.
 {¶ 57} Questions regarding the credibility of witnesses are matters that are best left to the trier of fact. DeHass at paragraph two of the syllabus. Appellant cross-examined Victim's Father regarding these slight inconsistencies at the adjudication hearing. The trial court observed the demeanor of the witness during the cross-examination and determined that the witness's statements were credible. As the reviewing court, we must defer to the trial court's finding that a witness is credible. Id.
 {¶ 58} Under these circumstances, we cannot find that the trial court lost its way or that there was such a manifest miscarriage of justice that a new trial must be ordered. Appellant's conviction of attempted gross sexual imposition is not against the manifest weight of the evidence, and the third assignment of error has no merit.
 {¶ 59} Based on the foregoing analysis, appellant's assignments of error are not well taken, and the judgment of the Trumbull County Court of Common Pleas, Juvenile Division is affirmed.
DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.
[1] Due to the sensitive nature of this case, and in order to protect the victim and his family members, their names will not be disclosed.
[2] Victim's Father testified that he immediately called his wife and the police department following the incident. Sgt. Uzurski testified that dispatch informed him at 2:30 p.m. to proceed to Victim's home. As stated previously, Victim's Mother arrived at home and talked to Victim prior to the arrival of Sgt. Uzurski, who arrived a little before 3:30.